FILED

2008 Nov-12  PM 02:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **MARVIN DUKES,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case. No.: 5:07-CV-01900-JHH** |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **Commissioner of Social Security,** } | |
| } | |
| **Defendant.** } | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff, Marvin Dukes, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.      Proceedings Below**

Plaintiff filed his application for DIB on May 28, 2004, alleging a disability onset date of October 18, 2002. (R. 17.) On September 10, 2004, Plaintiff's application was denied. (R. 17.) On September 24, 2004, Plaintiff filed a timely request for a hearing. (R. 17.) Thus, a hearing before an Administrative Law Judge ("ALJ") was held on June 2, 2006, in Huntsville, Alabama. (R. 17.) Plaintiff appeared and testified. (R. 17.) Because of some apparent inconsistencies in the record regarding Plaintiff's intellectual functioning, additional consultative psychological examination with assessment was ordered and a supplemental Video Hearing was held on January

9, 2007.  (R. 17.)  For that Video Hearing, Plaintiff and vocational expert Barbara Azzam made appearances.  (R. 17.)

In the April 13, 2007 decision, the ALJ determined that Plaintiff was not eligible for DIB because he was not under a "disability," as defined by the Act.  (R. 30.)  Thereafter, Plaintiff requested review of the ALJ decision by the Appeals Council.  That request was denied.

At the time of Plaintiff's alleged onset of disability, he was forty-seven years old and had two years of college education.  (R. 498.)  Plaintiff's past relevant work as a material coordinator, mill operator, and painter were described by the vocational expert as being light to medium in exertion and skilled and unskilled.  (R. 26.)  According to Plaintiff, he has been unable to engage in substantial gainful activity since October 18, 2002, when he became unable to work due to pain, depression, bipolar disorder, and numerous surgeries. (R. 22; Doc. # 9 at 2.)  He alleges that his medications cause nausea, constipation, and diarrhea, as well as concentration and memory problems and slurred speech, and that he needs to rest by noon and misses four to five days of work a month due to pain or depression.  (R. 22, 501.)  Plaintiff also has a history of polysubstance abuse for which he had been treated in 1999, and it is unclear whether the depression was the primary condition or secondary to the substance abuse.  (R. 23.)

At the hearing, Plaintiff described that without the pain medications, his pain would be a 10 on a scale of 1 to 10, but with the medications the pain is reduced to an 8 or a 4 or 5 on the scale, depending on the particular medication taken that day.  (R. 499-500.)

## II.    ALJ Decision

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.*  First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.  The claimant's residual functional capacity consists of what the claimant can do despite his impairment.  Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).  Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff last met the insured status requirements of the Act on December 31, 2007.  (R. 20, No. 1.)  Plaintiff did not engage in substantial gainful activity during the period of time from his alleged onset of disability on October 18, 2002 until October 2005, but **has** performed substantial gainful activity in a part-time "sheltered workshop" since then.  (R. 20, No. 2.)  Plaintiff reported in May 2006 and testified in June 2006 that he was currently working for Huntsville Rehabilitation Services doing quality control inspecting and material recording for approximately seven hours a day, three to four days per week.  (R. 20, No. 2.)  The ALJ found that Plaintiff's quarterly/annual earnings records demonstrated that there was no continuous 12-month period of non-substantial gainful activity since at least October 2005.  (R. 20-21, No. 2.)

Although the ALJ found that Plaintiff did have the medically determinable impairments of degenerative disc disease of the cervical and lumbar spine with residuals of cervical fusion and lumbar laminectomy, high blood pressure, history of gout, bipolar disorder, obesity, and borderline intellectual functioning, (R. 21, No. 3), he nevertheless determined that Plaintiff did not have an impairment or combination of impairments that meet or medically equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1.  (R. 21, No. 4.)  According to the ALJ, if Plaintiff had stopped alcohol and cocaine abuse prior to October 2005, Plaintiff would have had the residual functional capacity to perform a full range of light work.  (R. 27, No. 13.)  Thus, the ALJ found that Plaintiff was not under a "disability" at any time during the relevant period.  (R. 29, No. 16.)

### III.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative,

remanded for further consideration.  (Doc. # 9 at 5.)  Plaintiff argues that the ALJ's decision is not supported by substantial evidence and that improper legal standards were applied.  "The ALJ found that the Plaintiff was under a disability from October 2002 through October 2005 but that a substance abuse disorder was a contributing factor material to the determination of disability during that period and the Plaintiff has been performing substantial gainful activity on a fairly regular basis and there is not evidence of any 12-month period of non-SGA [substantial gainful activity] since October 2005."  (Doc. # 9 at 5.)  Plaintiff alleges that in making that determination, the ALJ: (1) failed to give sufficient weight to the opinion of the treating physicians; and (2) failed to take into account Plaintiff's subjective complaints of pain.  (*See* Doc. # 9 at 1-2.)  Embedded in those issues are the related questions as to whether the ALJ erred in finding that the Plaintiff was engaging in substantial gainful activity after October 205 and whether error was made in finding that the Plaintiff's disability was determined by drug and alcohol abuse.  (See Doc. # 9 at 6, 9, 10, 12.)

## IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision

is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

## V.      Discussion

Against that backdrop of applicable standards, the court rejects Plaintiff's arguments for a remand and also for reversal.  For the reasons outlined below, the court finds that the ALJ properly discounted Plaintiff's subjective complaints and appropriately weighted the opinions of Plaintiff's against the backdrop of his substance abuse.  If a claimant is disabled, but has evidence of drug addiction or alcoholism, the ALJ *must* determine whether the drug addiction or alcoholism is a contributing factor material to the determination of the finding of disability.  *See* 20 C.F.R. § 404.1535(a).  In making this determination, the ALJ considers whether the claimant is disabled without drug addiction or alcoholism.  *See* 20 C.F.R. § 404.1535(b)(1).  The ALJ considers which of the disabling conditions would remain should the claimant stop using drugs or alcohol.  *See* 20 C.F.R. § 404.1535(b)(2).  If the ALJ determines that the claimant's remaining limitations would not be disabling, the ALJ will find that the drug usage or alcoholism is a contributing factor to the

determination of disability. *See* 20 C.F.R. § 404.1535(b)(2)(i). Drugs and alcohol are a contributing factor material to the determination of a disability when they form the exclusive basis for the finding of disability. If there are other grounds for finding the claimant disabled, then drugs and alcohol are not a contributing factor material to the determination of disability. *See* 20 C.F.R. § 404.1535(b)(2)(ii). A claimant's use of drugs or alcohol does not necessarily disqualify him from receiving disability if the claimant has other disabling conditions.

### A.    Weight Accorded to the Opinions of Plaintiff's Physicians

According to Plaintiff, the ALJ's improper evaluation of the opinions of his physicians led to his erroneous finding that Plaintiff could perform a full range of light exertional activity from October 2002 through October 2005 in the absence of alcohol and drug abuse. (*See* Doc. # 9 at 6.) Specifically, Plaintiff contends that the ALJ improperly gave "little weight" to the opinions of Drs. Gulati, Corman, Lloyd-Turney, Rogers, Walker, and Aggaral and improperly afforded "great weight" to the state agency medical consultant opinions in August 2004. (*See* Doc. # 9 at 6-9.) To the contrary, the court finds that the ALJ applied proper legal standards when weighting the opinions of the doctors, and his conclusions are supported by substantial evidence.

The weight properly afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends upon a number of factors, including the source's examining and treating relationship with the claimant, the evidence presented to support the opinion, the consistency of the opinion with the record as a whole, and the speciality of the medical source. *See* 20 C.F.R. § 416.927(d). The opinion of a physician, even a treating physician, may properly be discounted for good cause. *Crawford v. Commissioner*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Indeed, although a treating physician's opinion is typically given "substantial or considerable weight," that opinion

may deserve less weight under the following circumstances: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003)(affirming the ALJ's decision to give little weight to a treating physician's opinion due to several specific contradictions between the physician's opinion and other evidence of record). Nonetheless, if the ALJ has failed to articulate "good cause" for assigning less weight to a treating physicians's opinion, reversible error has occurred. *Lewis*, 125 F.3d at 1440.

### 1. Dr. Prem Gulati

Plaintiff was examined by Dr. Prem Gulati on August 5, 2004 at the request of the Social Security Administration. (R. 250-53.) At the conclusion of the examination, Dr. Gulati determined:

> This is a 50-year-old white male who still abuses drugs and alcohol and has a history of chronic neck and back pain. He uses more alcohol and drugs to relieve himself from the pain. He also has a history of gout even though it is in remission at this time. It is my impression that this gentleman will not be able to do any gainful employment.

(R. 253.) The ALJ noted that the opinion of Dr. Gulati showed that the claimant answered questions very aggressively, but that despite some tenderness and loss of motion in the neck, hip, etc., there was no muscle spasm, no difficulty getting on and off the examination table, no difficulty squatting and rising, and only slight difficulty heel to toe walking. "Although the claimant demonstrated not being able to make a fist on both sides, he was able to perform fine manipulative activities. Because of these benign findings, and the fact that Dr. Gulati had only examined the claimant once, the undersigned gives little weight to the statement by Dr. Gulati that the claimant would not be able to do any gainful employment." (R. 24.)

8

The court finds that the ALJ thoroughly analyzed the evidence set forth by Dr. Gulati. Although the ALJ's opinion should have - and did - take into account Dr. Gulati's observations regarding Plaintiff's condition when making his disability determination, it was entirely appropriate for the ALJ to give "little weight" to Dr. Gulati's conclusory assertion that Plaintiff will "not be able to do any gainful employment." (R. 253.)   It is axiomatic that although an ALJ can consider opinions from acceptable medical sources on such issues as whether a claimant is disabled, "the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)(2006); *see* SSR 96-5p, 61 Fed. Reg. 34471 (1996).  Moreover, Dr. Gulati's opinion that Plaintiff could not perform any work is not supported by objective medical signs and laboratory findings. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). "An acceptable medical opinion as to disability must contain more than a conclusory statement that the claimant is disabled. It must be supported by clinical or laboratory findings." *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (internal citations omitted).  Thus, because Dr. Gulati's opinion conflicted with medical findings, the ALJ was not required to consider Dr. Gulati's comment on the ultimate issue of disability.

### 2.    Dr. Lourdes Corman

Plaintiff also claims that the ALJ should have relied more heavily on the opinion of Dr. Corman, which opines that Plaintiff is completely and totally disabled.  (Doc. # 9 at 7.) Dr. Corman apparently treated Plaintiff at Huntsville Hospital in January of 2005 for staph septicemia and polyarticular febrile gout and, based on his treatment of Plaintiff from this single hospital admission, decided Plaintiff was "completely and totally disabled." (R. 371.) The ALJ gave "little weight" to that opinion, noting that "there is no evidence that Dr. Corman had any previous contact with the

claimant other than during that one hospitalization" and also noting that Dr. Corman had "no personal knowledge of the claimant's condition other than what she had seen during that brief hospitalization." (R. 24-25.)

The court finds that the ALJ thoroughly analyzed the, albeit scant, evidence set forth by Dr. Corman. Dr. Corman's opinion is not entitled to the deference afforded to that of the long-term relationship of a treating physician. *See* 20 C.F.R. § 404.1527(d), 416.927(d). Moreover, Dr. Corman's opinion is not supported by objective medical signs and laboratory findings. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Thus, the ALJ was not required to consider Dr. Corman's comment on the ultimate issue of disability.

**3.    Dr. Celia Lloyd-Turney**

Plaintiff next claims that the ALJ erred in giving "little weight" to the opinion of Dr. Lloyd-Turney dated May 25, 2006. The sum total of Dr. Lloyd-Turney's opinion is as follows:

> Mr. Dukes has the following medical problems:
>
> Degenerative disc disease (severe)
> Hypertension
> Gout
> GERD
> Arthritis (severe, multiple sites)
> Depression
>
> Due to these multiple medical problems Mr. Dukes is totally and permanently medically disabled.

(R. 380.) The ALJ considered the opinion of Dr. Lloyd-Turney and significantly noted that there is "no evidence upon which that opinion was based" and that it applied only for the period *before* the claimant began performing substantial gainful activity. (R. 25.)

_____The court finds that the ALJ thoroughly analyzed the scant evidence set forth by Dr. Lloyd-Turney.  Dr. Lloyd-Turney's opinion is not entitled to the deference afforded to that of the long-term relationship of a treating physician, is not supported by objective medical signs and laboratory findings, and flies in the face of the evidence establishing that claimant engaged in substantial gainful activity after October 2005.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d), 416.1929(c)(3)(i), 416.971.  Thus, the ALJ had substantial evidence to afford the opinion of Dr. Lloyd-Turney little weight.

_____**4.**     **Dr. Jon Rogers**

On May 17, 2006, a psychological examination was performed on claimant by Dr. Jon Rogers at the request of claimant's attorney.  (R. 381.)  Dr. Rogers diagnosed claimant with bipolar disorder, anxiety disorder, mild mental retardation, dementia, and physical impairments and assessed his Global Assessment of Functioning at 48.  (R. 386.)  He further determined that Plaintiff had marked mental limitations, including marked impairment of ability to respond to customary work pressure, marked inability to understand, carry out, and remember instructions in a work setting, and marked inability to perform repetitive tasks in a work setting.  (R. 387-88.)  The ALJ rejected the opinion of Dr. Rogers as at the time of the examination, Plaintiff admitted to recently drinking and reported many symptoms of depression, panic, mania, and problems with social interaction, was tearful, and had a liable affect.  (R. 25.)

The court finds that the ALJ properly discounted the opinion of Dr. Rogers.  Dr. Roger's opinion is not entitled to the deference afforded to that of the long-term relationship of a treating physician.  *See* 20 C.F.R. § 404.1527(d), 416.927(d).  Moreover, the ALJ was required to take into

account Plaintiff's admitted drug and alcohol abuse and the interplay that abuse had on Plaintiff's

mental capacity.  (*See* Explanation of Substance Abuse Standard below, Section V.A.6.)

### 5.    Drs. Walker and Aggaral

At the request of the Social Security Administration, Plaintiff was examined by Dr. Walker

on October 9, 2006.  (R. 389-400.)  Plaintiff reported to Dr. Walker that his pain ranges from a 7 to

a 10 on a daily basis, but Dr. Walker found it "noteworthy" that "no pain behaviors were observed

during the evaluation."  (R. 389.)  Plaintiff denied "current use of tobacco or alcohol" but

"acknowledges the use of other recreational or illicit drugs." (R. 390.) Dr. Walker also commented:

> Gross observation of sensory skills indicates no deficits.  His cognitive skills are
> measured to fall in the borderline range overall; however, his presentation during the
> evaluation is consistent with a higher level of functioning.  His capacity to
> understand and follow instructions is unimpaired.  He should have no difficulty
> completing simple or complex instructions.  Expressive and receptive language is
> unimpaired.  There has [sic] no evidence of life long mental slowing.  He exhibits
> appropriate social skills during the evaluation and there is no perceived difficulty
> with regard to his ability to interact with coworkers, supervisors, or others in a work
> environment.  His ability to receive supervision also appears unimpaired.

(R. 392.)

Also at the request of the Social Security Administration, Plaintiff was examined by Dr.

Aggarwal.  (R. 403-405.)  Dr. Aggarwal's conclusion was that Plaintiff was precluded from gainful

employment due to chronic neck and low back pain with cervical and lumbosacral radiculitis.  (R.

405.)

Plaintiff claims that the ALJ failed to give proper weight to the evaluation of Drs. Walker

and Aggarwal.  Those findings were discounted by the ALJ because they were made in late 2006 and

early 2007, *after* October 2005 when Plaintiff, in the opinion of the ALJ, began performing

substantial gainful activity.  (R. 25.)  Work activity logically constitutes a valid reason to give

opinions on inability to work little weight.  *See* 20 C.F.R. §§ 416.1929(c)(3)(i), 416.971 (2007).  (*See also* discussion, Section V.C. regarding substantial gainful activity.)  Thus, the court finds that the ALJ gave the proper weight to the opinions of Drs. Walker and Aggarwal.

                **6.**      **Dr. McDonald and State Agency Mental Health Doctors and the Finding that Plaintiff was not Disabled Absent Substance Abuse**

The ALJ properly gave great weight to the opinions of Dr. McDonald, the mental health center, and the state agency mental health doctors, all of which showed that when Plaintiff's alcohol and substance abuse is in remission, he functions at a much higher level.[1]  (R. 254-57, 297-317.)  Those opinions were consistent with the medical record and well-explained.  (R. 25, 259-96A.)  *See Wolfe v. Chater*. 86 F.3d 1072, 1079 (11th Cir. 1996), *citing Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (noting that the ALJ's task is to examine the evidence and resolve conflicting reports).

Indeed, the ALJ was required to consider whether Plaintiff would be disabled absent alcohol and substance abuse.  *See* P.L. No. 104-121 § 105(a)(1) (amending Title II of the Social Security Act).  *See also* P.L. No. 104-121 § 105(b)(1) (containing identical language amending Title XVI of the Social Security Act).  "If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a

---

[1] "[Dr. McDonald's] opinion . . . is consistent with the claimant's presentation of the claimant's emotional state to both him and Dr. Gulati in August 2004, as well as with previously known episodes of significant decompensation when under the influence of alcohol or drugs.  Notably, in June 2004 the claimant had been assessed with a GAF of 70 by the mental health center, during a period – however brief – the claimant reported being in remission from alcohol and drugs for at least some weeks.  The DSM-IV sates that a GAF of 61 to 70 indicates only some mild symptoms.  Therefore, the record supports a finding that with substance abuse the claimant had severe impairment of mental functioning, but in the absence of substance abuse he had no more than moderate mental impairment."  (R. 24.)

contributing factor material to the determination of disability." 20 C.F.R. § 416.935(a) (2007).  That is, the key factor to be considered by the ALJ is whether the Plaintiff would still be disabled absent the drug addiction or alcoholism.  *See* 20 C.F.R. § 416.935(b)(1) (2007).

The court finds that the ALJ properly weighed the evidence before him to conclude that, from the period of October 2002 through October 2005, Plaintiff's alcoholism and drug abuse was disabling and had Plaintiff stopped using those substances, he would not be disabled.  (R. 22.)  There are numerous instances of alcohol and substance abuse reported in the record, and the ALJ specifically found that "at least until sometime in 2006 he [Plaintiff] was still drinking heavily."  (R. 23, 303, 306, 209.)  In fact, absent the drug and/or alcohol abuse, the ALJ found that the Plaintiff had: the same *physical* limitations but no deficits in sensory skills; borderline cognitive skills but personal presentation consistent with a higher level of functioning; unimpaired ability to follow instructions including either simple or complex instructions; and unimpaired expressive and receptive language ability.  (R. 27.)  The ALJ based that conclusion on substantial evidence from the record, including: (1) Plaintiff's part-time substantial gainful work activity (*see* discussion Section V.C.); (2) two electromyography reports showing only mild to moderate left carpal tunnel syndrome with no left ulnar neuropathy, cervical radiculopathy, or right carpal tunnel syndrom (R. 22, 138-141); (3) Plaintiff's release to full work duties in November 2001 after undergoing arthroscopic surgery of the right shoulder in October 2001 (R. 23, 166); (4) the lack of treatment for any physical impairments from February 2003 through December 2003 and after February 2005 (R. 23, 25, 297-371); (5) the clinical findings contained in Dr. Prem Gulati's physical examination done in August 2004 (R. 24, 250-53) (*see* discussion of Dr. Gulati Section V.A.1.); (6) Plaintiff's favorable response to treatment after an exacerbation of gout and his own admission that he had been doing well until

just a couple of days before the hospitalization (R. 24, 192-93); and (7) the state agency doctor's August 2004 report that Plaintiff could perform a wide range of light work.  (R. 25, 258-265.)   The ALJ also had substantial evidence upon which to base Plaintiff's mental residual functional capacity evaluation absent the use of drugs and alcohol: (1) Dr. Carol Walker's consultative psychological examination wherein Plaintiff reported being independent in his daily activities, his working memory was in the low average range and his presentation was consistent with a higher level of functioning than borderline intellectual functioning (R. 21, 391-92); (2) the fact that Plaintiff's depression was noted as stable in December 2002 (R. 23, 191); (3) the medical records substantiating Plaintiff's drug and alcohol abuse (R. 23-24, 297-319); (4) Dr. William McDonald's assessment of Plaintiff's diagnoses which included alcohol dependence, Dr. McDonald's assessment of Plaintiff's GAF score of 50, and Dr. McDonald's opinion that Plaintiff would not likely improve as long as he continued to abuse alcohol (R. 24, 254-57); (5) the assessment by the mental health center that Plaintiff had a GAF score of 70 in June 2004 when he reported remission from alcohol and drugs (R. 24, 300); (6) statements made during Plaintiff's hospitalization for a flare of gout that Plaintiff's neuro/psychological functions were normal and his mental functioning was normal (R. 24, 320, 326); and (7) the state agency medical consultants' opinions that when alcohol was considered, Plaintiff was disabled, but that when alcohol was not considered, he had no more than moderate mental impairments (R. 25, 266-296A.)

Thus it is clear and the court finds that the ALJ had substantial evidence upon which to base his conclusion that Plaintiff failed to show that he was entitled to disability benefits after January 1, 1997, based on age or impairment other than drug addiction.  *See Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001); *see also Dyer*, 395 F.3d at 1210.

**B.**     **Evaluation of Plaintiff's Subjective Complaints of Pain**

Plaintiff alleges that in determining his ability to work, the ALJ failed to appropriately evaluate his alleged pain and subjective symptoms.  (Doc. # 9 at 9-10.)   The Act and its related regulations provide that a claimant's statements about pain or other symptoms will not alone establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929.  Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

When, as here, a claimant alleges disability through subjective complaints of pain or other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: (1) evidence of an underlying medical condition, and *either* (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, *or* (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain. *See* 20 C.F.R. § 404.1529; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt*, 921 F.2d at 1223; *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, although an individual's statement of pain is not, by itself, conclusive of disability.  *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992); 42 U.S.C. § 423(d)(5)(A).  If the ALJ fails to credit a claimant's pain testimony, he must articulate reasons for that decision. 42 U.S.C. § 423(d)(5)(A).

After the application of the three-pronged pain standard, Eleventh Circuit jurisprudence requires a secondary inquiry, which evaluates the severity, intensity, and persistence of the pain and the symptoms a claimant actually possesses.  Indeed, there is a difference between meeting the judicially created pain standard and having disabling pain; meeting the pain standard is merely a

threshold test to determine whether a claimant's subjective testimony should even be considered at all to determine the severity of that pain. *See* 20 C.F.R. § 416.929(b) (2006); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("The Secretary must consider a claimant's subjective testimony of pain if [the pain standard is met]."). After considering a claimant's complaints of pain, an ALJ may then "reject them as not creditable." *Marbury*, 957 F.2d at 839. Although a reversal is warranted if the ALJ's decision contains no indication that the three-part pain standard was properly applied, *Holt*, 921 F.2d at 1223, the Eleventh Circuit has held that an ALJ's reference to 20 C.F.R. § 404.1529, along with a discussion of the relevant evidence, demonstrates the ALJ properly applied the pain standard, *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

In this case, the court finds that the ALJ's analysis comports with the requirements of the Eleventh Circuit's "pain standard" for evaluating Plaintiff's subjective complaints. Here, the ALJ cited 20 C.F.R. § 404.1529 and 416.929 and considered Plaintiff's symptoms and subjective complaints in light of the standards outlined therein. (R. 28.) The ALJ determined that Plaintiff's statements concerning his pain and its impact on his ability to work are not entirely credible because: (1) if Plaintiff had stopped the substance abuse his medically determinable impairments during the period prior to October 2005 reasonably could have been expected to produce some of the alleged symptoms, but the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible; and (2) from a physical standpoint, although Plaintiff had a history of neck, low back, and other surgeries, as well as recurrent bouts of gout, there is no evidence of any ongoing care for his physical problems after February 2003 until December 2003, and then after that not until October 2004, and then after February 2005 until sometime in 2006, long

17

after he had started performing substantial gainful activity as a counter.[2]  (R. 28-29, 297-317.)  The findings were based on a comprehensive examination of the records of Plaintiff's physicians and individualized assessment of the strengths thereof.  In fact, the Eleventh Circuit recognizes that a plaintiff's failure to seek treatment for a period of time is a factor to be considered against a plaintiff's subjective complaints of pain.  *See Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984).

⎯⎯⎯⎯⎯For these reasons, and because record evidence establishes that Plaintiff could perform some light, semiskilled work activity during the relevant time period, *(see* 20 C.F.R. § 404.1571; 416.1929(c)(3)(i); 416.971 (2007) and Section V.C. below), the court finds that the ALJ had substantial evidence upon which to discount subjective complaints of pain.

### C.    Substantial Gainful Activity

Plaintiff alleges that the ALJ erred in finding that Plaintiff was engaging in substantial gainful activity after October 2005.  (Doc. # 9 at 10.)  In support of that claim, Plaintiff points to the November 8, 2006 letter from Mr. Daniel Darracott, Plaintiff's case manager at the Huntsville Rehabilitation Foundation, which states that Plaintiff "is not capable of obtaining and holding a job in a competitive work environment at this time."  (R. 402.)  Mr. Darracott specifically reported that Plaintiff's issues with pain lead to significant increase in the period of time needed to complete assignments and anti-social tendencies result in significant absenteeism.  (R. 402.)  Mr. Darracott

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[2] "From a physical standpoint, although he had a history of neck, low back, and other surgeries, as well as recurrent bouts of gout, there is no evidence of any ongoing care for his physical problems after February 2003 until December 2003, and then after that not until October 2004, and then after February 2005 until sometime in 2006, long after he had started performing substantial gainful activity as a counter."  (R. 29.)

further draws the conclusion that Plaintiff's high absenteeism and slow work practices would lead to termination in a competitive work force.  (R. 402.)

The ALJ did indeed give the opinion of Mr. Darracott little weight on the ground that "there is no evidence to support a finding that the claimant's work activity at Rehab at least since October 2005 was not [substantial gainful activity]."  (R. 25.)  Indeed in May and June 2006, Plaintiff reported that he was working for Rehabilitation Services doing quality control inspecting and material recording, approximately seven hours a day, and three to four days a week.  (R. 20.)  In January 2007 Plaintiff reported continued work for Rehab.  (R. 20.)The ALJ thoroughly analyzed the work being performed by Plaintiff, citing 20 C.F.R. §§ 404.1572, 416.972, 404.1574(a)(3), 416.974(a)(3), 404.1574(b) and 416.974(b) that part-time work may be considered substantial even if it is done in a "sheltered" workshop.  (R. 20.)  The ALJ also considered Plaintiff's earnings in his work activity[3] and used that information to find that "there has been no continuous 12-month period of non-substantial gainful activity since at least October 2005."  (R. 21.)

The court finds that the ALJ properly considered Plaintiff's work activity in denying his claim for disability.  According to the vocational expert, the job of a counter (which Plaintiff was performing for Rehab) is light and semiskilled, thus demonstrating that Plaintiff does indeed retain

---

[3] "The claimant's earnings records show that he was hired by Huntsville Rehabilitation in January 2005.  He was rehired by Huntsville Rehabilitation on July 18, 2005.  Although he only earned $1836 for the third quarter of 2005 (July through September), he earned $2615.00 for the fourth quarter (or an average of $871.66 per month, October through December) of 2005, and he earned $3204.00 for the first quarter (or an average of $1068.00 per month, January through March) of 2006.  Quarterly/annual earnings records available in April 2007 show that the claimant earned an average of $747.33 a month for March through June 2006, but an average of $1043.33 a month for the period July through September 2006, an average of $917.40 a month for the period from October through December 2006."  (R. 20.)

the capacity for light work.[4]  (R. 29, 507.)  *See* 20 C.F.R. §§ 404.1571, 416.1929(c)(3)(I), 416.971.

Moreover, Plaintiff produced no evidence to support a finding that he meets any of the criteria set

forth under 20 C.F.R. § 404.1573(c).  There is no proof that Plaintiff required special assistance from

other employees in performing his work, no evidence that he worked irregular hours or took frequent

rest breaks, no evidence that he was assigned special equipment or that someone helped him get

ready for work, and no evidence that Plaintiff was not independent in his daily activities.  (R. 382,

391-92.)  The ALJ thus had substantial evidence to support his decision, and this court cannot re-

weigh the evidence.  *Dyer*, 395 F.3d at 1210; *Phillips*, 357 F.3d at 1240 n. 8.

**VI.    Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported

by substantial evidence and proper legal standards were applied in reaching this determination.  The

---

[4] "The vocational expert testified that if the claimant had the residual functional capacity as set forth [in the ALJ's finding], he would be able to perform his past relevant work as a material coordinator . . . and that the claimant would also be able to perform other unskilled light jobs such as: ticket marker . . . mail sorter . . . and photo copy operator . . . existing each at least 300 in the region (within 50 miles of Huntsville) and at hundreds of thousands nationally.  The vocational expert went on to further testify that even if the claimant also needed a sit/stand option, the claimant could perform those named jobs.  The vocational expert further testified that if the claimant was otherwise restricted to sedentary exertion, he would be able to perform the jobs of surveillance monitor . . . order clerk . . . and table worker . . . existing together in hundreds of thousands in the national economy."  (R. 29.)

Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

    **DONE** this the   12th   day of November, 2008.

                                     SENIOR UNITED STATES DISTRICT JUDGE